UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAQUEALA HOLLY,

    Plaintiff,

-vs-

BEAUMONT HEALTH, a
Domestic Non-profit Corporation,
and BOTSFORD GENERAL HOSPITAL,
a Domestic Non-profit Corporation,
Jointly and Severally,

    Defendants.

Case No. 18-cv-

Hon.

---

Barry S. Fagan  (P34275)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
bfagan@faganlawpc.com

---

### **COMPLAINT AND JURY DEMAND**

A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed with the American Arbitration Association.  The action remains pending.  The Case number is: 01-18-0002-5052.

NOW COMES Plaintiff, SHAQUEALA HOLLY, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendants, jointly and severally, states as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff, SHAQUEALA HOLLY (hereinafter "Holly") is an individual residing in the City of West Bloomfield, County of Oakland, State of Michigan.

2. Defendant, BEAUMONT HEALTH (hereinafter "Beaumont") is a Domestic Non-Profit Corporation and at all times pertinent hereto did operate a medical facility in the City of Farmington Hills, County of Oakland, State of Michigan.

3. Defendant, BOTSFORD GENERAL HOSPITAL (hereinafter "Botsford") is a Domestic Non-Profit Corporation and at all times pertinent hereto did operate a medical facility in the City of Farmington Hills, County of Oakland, State of Michigan.

4. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended, 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1367 (supplemental).

5. The amount in controversy is in excess of $75,000.00, exclusive of interest, costs, and attorney fees, and punitive damages.

## GENERAL ALLEGATIONS

6. Holly commenced her employment with Defendants on November 16, 2012 as an Occupational Therapist.

7. Holly's date of birth is October 6, 1982.

8. During her five years of employment with Defendants, Holly performed her job in an excellent manner and consistently received positive annual performance evaluations.

9. On May 1, 2017, Holly was pregnant and went on an early maternity leave on orders from her doctor.

10. During the delivery of her child, Holly suffered a pubic symphysis strain that required Holly to use a walker, then crutches, and then later to undergo physical therapy in order to facilitate the healing process.

11. In October of 2017, Holly's supervisor, Helene Rose, required Holly to complete work-related computer modules while Holly was still on maternity leave.

12. Holly completed the computer modules, which took her over three and a half hours to complete.

13. After completing the computer modules, Holly requested compensation and was informed by Helene Rose that she could not be compensated because she didn't physically "punch in" at work and instead completed the task from home.

14. Holly expressed her disappointment through email and phone conversations to the head of the department, Merlin Francis.

15. Shortly after, in November of 2017, Holly received a phone call from Defendants' Human Resources department informing her that they had yet to receive her leave packet.

16. Holly was also informed that, because the leave packet had not been returned, her absences since beginning her maternity leave on May 1, 2017, were unexcused.

17. Holly never received a leave packet in the mail, despite Defendants' insisting that they had sent it sometime in November.

18. On December 7, 2017, Holly received the leave packet in the mail.

19. On December 11, 2017, Holly filled out the leave packet and returned it to Defendants, as requested, with the exception of the medical certification form, because she had already provided a note from her physician extending her leave until January 1, 2018.

20. On December 11, 2017, after sending in the completed leave packet, Holly emailed Sharon Burke-Thomas (hereinafter "Thomas") in human resources to determine whether she was required to have the medical certification form completed, since Holly had already provided the note from her physician.

21. Thomas never responded to this email.

22. In early January of 2018, Holly received a call from Thomas informing her that, because they had not received her medical certification, her position had been posted and it would be up to her manager's discretion regarding whether she could return to her position as an occupational therapist at Defendants.

23. Holly then pleaded with Human Resources personnel to retain her employment and informed them that she had inquired about the medical certification form and no one had responded to her request for clarity with regard to the form.

24. On January 3, 2018, Holly went to see Dr. M. David Jackson, a physical medicine physician, regarding her medical condition.

25. Dr. Jackson provided a return to work/disability form to Holly that stated she was suffering from pubic symphysis strain and could not return to work until approximately February 5, 2018.

26. Holly's husband, Timothy Holly, faxed the doctor's note to Defendants upon receipt of it.

27. On January 10, 2018, Holly received a letter from Defendants indicating that her employment at the hospital had been terminated as of January 2, 2018.

28. Holly filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC") on April 18, 2018 alleging that her employment was terminated due to her sex and disability under Title VII of the Civil Rights Act of 1964 and 1991, as amended ("Title VII") and the Americans with Disabilities Act of 1990, as amended ("ADA").

29. On April 24, 2018 the EEOC issued a Notice of Right to Sue letter regarding her Charge of Discrimination.

## COUNT I
## VIOLATION OF TITLE VII

30. Holly incorporates paragraphs 1 through 29 above as if specifically repeated herein.

31. At all times relevant thereto, Defendants were employers within the meaning of Title VII of the Civil Rights Act of 1964 and 1991, as amended.

32. Title VII prohibits discrimination and harassment against any individual with respect to compensation, terms, conditions, privileges or employment because of individual's sex, which includes pregnancy.

33. Defendants violated Title VII's prohibition against sex/pregnancy discrimination and took adverse action toward Holly because of Holly's sex/pregnancy in the following particulars, including, but not limited to:

    a. Discriminating against Plaintiff based upon her pregnancy in violation of 42 U.S.C. §2000e(k);

    b. Forcing Plaintiff to work while on maternity leave;

      c.      Terminating Plaintiff's employment;

      d.      Failing to accommodate Plaintiff's medical leave regarding her pregnancy-related complications.

      e.      Other acts of discrimination to be determined through discovery.

34. As a direct and proximate result of Defendants' discriminatory conduct toward Holly, Holly has suffered and will in the future suffer damages including, but not limited to:

      a.      Loss of wages and earning potential;

      b.      Loss of employee benefits;

      c.      Loss of promotional opportunities;

      d.      Loss of professional esteem and consequent damage to Plaintiff's professional career;

      e.      Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

      f.      Exemplary damages;

      g.      Other damages to be determined through discovery.

35. The above-referenced discriminatory conduct by Defendants toward Plaintiff was malicious and/or engaged in with reckless indifference to Plaintiff's federally protected civil rights and, as a result, Plaintiff is entitled to punitive damages.

    WHEREFORE, Holly prays for Judgment against Defendants, jointly

and severally, for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Holly also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

36.  Holly incorporates paragraphs 1 through 35 above as if specifically repeated herein.

37.  At all times relevant hereto, Defendants were employers within the meaning of the Elliot-Larsen Civil Rights Act (hereinafter referred to as the "ELCRA").

38.  The ELCRA prohibits, among other things, discrimination based upon sex.

39.  Sex discrimination includes discrimination based upon pregnancy.

40.  Notwithstanding the duties owed to Holly pursuant to the ELCRA, Defendants took adverse action toward Holly because of her sex/pregnancy, including, but not limited to:

   a.   Discriminating against Holly based upon her pregnancy;

   b.   Forcing Holly to work while on maternity leave;

    c.      Terminating Holly's employment;

    d.      Failing to accommodate Plaintiff's medical leave regarding her pregnancy-related complications;

    e.      Other acts of discrimination to be determined through discovery.

41.    As a direct and proximate result of Defendants' discriminatory conduct toward Holly, Holly has suffered and will in the future suffer damages including, but not limited to:

    a.      Loss of wages and earning potential;

    b.      Loss of employee benefits;

    c.      Loss of promotional opportunities;

    d.      Loss of professional esteem and consequent damage to Holly's professional career;

    e.      Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

    f.      Exemplary damages;

    g.      Other damages to be determined.

WHEREFORE, Holly prays for Judgment against Defendants, jointly and severally, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Holly also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems

appropriate.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

42. Holly incorporates paragraphs 1 through 41 above as if specifically repeated herein.

43. At all times relevant hereto, Defendants were employers within the meaning of the Americans with Disabilities Act of 1991, as amended, hereinafter referred to as the "ADA".

44. At all times relevant hereto, Holly had a disability, was regarded by Defendants as suffering from a disability, and/or had a history of a disability under the ADA.

45. Defendants had a duty under the ADA not to discharge or otherwise discriminate against Holly in her employment on the basis of her disability, perceived disability, and/or history of disability.

46. Defendants violated Holly's rights under the ADA, on the basis of her disability, perceived disability, and/or history of disability by, engaging in the following conduct:

    a. Terminating Plaintiff's employment;

    b. Denying Holly's request for a reasonable accommodation(s);

    c. Refusing to engage in an interactive process regarding Holly's request for accommodation(s);

   d. Other acts of discrimination with respect to the terms, conditions, and privileges of Holly's employment.

47. As a result of Defendants' discriminatory conduct toward Holly, Holly has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

   a. Loss of wages and earning potential;

   b. Loss of employee benefits;

   c. Loss of promotional opportunities;

   d. Loss of professional esteem and consequent damage to Plaintiff's professional career;

   e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

   f. Other injuries and damages that become known through the discovery process.

48. The above-referenced discriminatory conduct by Defendants toward Plaintiff was malicious and/or engaged in with reckless indifference to Plaintiff's federally protected civil rights and, as a result, Plaintiff is entitled to punitive damages.

WHEREFORE, Holly prays for Judgment against Defendants, jointly and severally, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, punitive damages, and attorney fees. Holly also

seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

### COUNT IV
### VIOLATION OF THE PERSONS
### WITH DISABILITIES CIVIL RIGHTS ACT

49. Holly incorporates paragraphs 1 through 48 above as if specifically repeated herein.

50. At all times relevant herein, Defendants were Employers under the Michigan Persons with Disabilities Civil Rights Act, hereinafter referred to as the "PWDCRA," MCL 37.1101 et seq.

51. At all times relevant hereto, Holly had a disability, was regarded by Defendants as having a disability, and/or had a history of disability under the PWDCRA.

52. Defendants had a duty under the PWDCRA not to discharge or otherwise discriminate against Holly in her employment on the account of such disability, perceived disability, and/or history of disability.

53. Defendants violated Holly's rights under the PWDCRA, and Holly's disability, perceived disability, and/or history of disability was a motive or reason that made a difference in Defendants' conduct, including, but not limited to, the following:

    a.    Terminating Plaintiff's employment;

    b.    Denying Holly's request for a reasonable accommodation(s);

    c.    Refusing to engage in an interactive process with regarding Holly's request for accommodation(s);

    d.    Other acts of discrimination with respect to the terms, conditions, and privileges of Holly's employment.

54. As a result of Defendants' discriminatory conduct toward Holly, Holly has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

    a.    Loss of wages and earning potential;

    b.    Loss of employee benefits;

    c.    Loss of promotional opportunities;

    d.    Loss of professional esteem and consequent damage to Holly's professional career;

    e.    Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

    f.    An award of attorney fees;

    g.    Exemplary damages;

    h.    Other damages to be determined.

WHEREFORE, Holly prays for Judgment against Defendants, jointly and severally, in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Holly also seeks equitable

relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

                        Respectfully submitted,

                        FAGAN MCMANUS, P.C.

                        By: /s/ *Barry S. Fagan*
                            Barry S. Fagan  (P34275)
                            Attorney for Plaintiff
                            25892 Woodward Avenue
                            Royal Oak, MI  48067-0910
                            (248) 542-6300
Dated:  July 24, 2018            bfagan@faganlawpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAQUEALA HOLLY,

    Plaintiff,

-vs-

BEAUMONT HEALTH, a
Domestic Non-profit Corporation,
and BOTSFORD GENERAL HOSPITAL,
a Domestic Non-profit Corporation,
Jointly and Severally,

    Defendants.

Case No. 18-cv-

Hon.

---

## PLAINTIFF'S DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, by and through her attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

    Respectfully submitted,

    FAGAN MCMANUS, P.C.

    By: /s/ *Barry S. Fagan*
        Barry S. Fagan  (P34275)
        Attorney for Plaintiff
        25892 Woodward Avenue
        Royal Oak, MI  48067-0910
        (248) 542-6300

Dated:  July 24, 2018
        bfagan@faganlawpc.com