UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAQUEALA HOLLY,                         )
                                         )
                          Plaintiff,     )
                                         )    Case No. 18-cv-12317
              v.                         )    Judge:  Denise Page Hood
                                         )
BEAUMONT HEALTH, a Domestic              )
Non-profit Corporation, and              )
BOTSFORD GENERAL HOSPITAL, a             )
Domestic Non-profit Corporation,         )
Jointly and Severally,                   )
                                         )
                          Defendants.    )
_____/

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Beaumont Health and Botsford General Hospital (collectively "the Hospital" or "Defendants") by and through its attorneys, Clark Hill PLC, states as follows for their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56:

1.      This is an employment case. Plaintiff's four-count Complaint alleges claims of pregnancy discrimination under the Pregnancy Discrimination Act ("PDA") and the Elliott-Larsen Civil Rights Act ("ELCRA") and claims of disability discrimination under the Americans with Disabilities Act ("ADA") and Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

222242427.2

2.     Plaintiff was employed by the Hospital as a part-time contingent occupational therapist.

3.     In May 2017, while pregnant for the third time during her employment with the Hospital, Plaintiff requested a non-FMLA medical leave to accommodate her high-risk pregnancy. The Hospital granted her request for leave during her pregnancy.

4.     After giving birth in August 2017, Plaintiff requested to extend her medical leave until January 1, 2018. The Hospital sent Plaintiff non-FMLA paperwork to be completed by both her and her physician.  Plaintiff filled out and returned only her part of the paperwork. She did not have her physician complete the medical certification. Despite the fact that she failed to complete the necessary paperwork substantiating the need for her extended leave request, the Hospital allowed her to remain out on leave until January 2, 2018.

5.     After receiving eight months of non-FMLA leave, on January 2, after Human Resources inquired about her return to work, Plaintiff indicated that she could not return to work and may need to further extend her leave. Despite being told what procedures she needed to follow, Plaintiff did not submit the necessary paperwork to extend her leave again.

222242427.2

6.     After Plaintiff failed to follow up with the Hospital, it began the process of posting Plaintiff's position to ensure it could meet its staffing needs to provide proper patient care.

7.     By January 10, 2018, Plaintiff still had not provided the necessary documentation to extend her leave and was administratively terminated.  Plaintiff remains eligible for re-hire.

8.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  All "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).  Summary judgment must be granted if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to . . . [her] case, and on which . . . [she] will bear the burden of proof at trial."  *Celotex Corp. v. Catrett, 477 U.S. 317, 322* (1986); *Harrison v. Oakland County*, 2009 U.S. Dist. LEXIS 29039 (E.D. Mich. Mar. 31, 2009). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is insufficient, however, simply to show "that there is some metaphysical

3

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *Abdulnour v. Campbell Soup Supply Co*., LLC, 502 F.3d 496, 501 (6th Cir. 2007).

9.     Plaintiff's claims of discrimination and failure to accommodate have absolutely no merit and are subject to dismissal. Plaintiff has no facts or evidence showing that her pregnancy or post-partum complications were related to the decision to terminate her employment. Nor does she have any facts or evidence that the Hospital failed to accommodate her. Plaintiff received more than eight months of leave from the Hospital. She requested and received a reduction in hours and three extensions of her leave of absence. These favorable actions were taken after Plaintiff announced her pregnancy and after she made the Hospital aware of her post-partum complications. Plaintiff was terminated because she simply failed to communicate with the Hospital or take any action to further extend her leave of absence. Plaintiff's claims are subject to summary judgment.

10.     For these reasons, and the reasons set forth in the attached Brief in Support and exhibits, Plaintiff cannot establish a genuine issue of material fact. Defendants are entitled to summary judgment.

4

11.     Pursuant to Local Rule 7.1(d), the undersigned contacted Plaintiff's counsel and requested, but did not obtain, concurrence in the relief requested in this Motion.

## <u>CONCLUSION</u>

Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

CLARK HILL PLC

By:    s/Carly O. Machasic
          Carly O. Machasic (P75572)
          Hannah Reisdorff Kendall (P80101)
          Attorneys for Defendants
          500 Woodward Avenue, Suite 3500
          Detroit, Michigan 48226
          P: (313) 965-8300
          cmachasic@clarkhill.com
          hkendall@clarkhill.com

Date:  September 26, 2019

222242427.2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAQUEALA HOLLY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-12317 |
| | ) | Judge:  Denise Page Hood |
| v. | ) | |
| | ) | |
| BEAUMONT HEALTH, a Domestic | ) | |
| Non-profit Corporation, and | ) | |
| BOTSFORD GENERAL HOSPITAL, a | ) | |
| Domestic Non-profit Corporation, | ) | |
| Jointly and Severally, | ) | |
| | ) | |
| Defendants. | ) | |

/

**BRIEF IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## **<u>TABLE OF CONTENTS</u>**

INDEX OF AUTHORITIES .................................................................. iii

ISSUES PRESENTED.......................................................................v

INTRODUCTION .........................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................4

Plaintiff's Employment .................................................................4

Plaintiff Takes Multiple Maternity Leaves Throughout Her Employment ..............5

PM&R Department is Family Friendly ..................................................5

Plaintiff Announces Her Fourth Pregnancy and Requests a Reduction in Hours .....6

Plaintiff Receives a Four Month Leave of Absence as an Accommodation............7

Beaumont's Leave Procedures.................................................................7

Plaintiff Gives Birth to Her Fourth Child in August 2017 .......................................8

The Hospital Inquires About Plaintiff's Return to Work .........................................8

Plaintiff Does Not Know When She Will Return to Work .......................................9

Plaintiff Indicates She Will Be Extending Her Leave Indefinitely .........................10

Plaintiff Requests an Extension of Her Maternity Leave .......................................11

Plaintiff Does Not Return to Work or Contact the Hospital by January 1 ..............12

The Hospital Never Receives Any Further Communication from Plaintiff............13

LEGAL ARGUMENT ........................................................................14

i

I.   PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF
     PREGNANCY OR DISABILITY DISCRIMINATION.....................14

     A.   Plaintiff Cannot Show a Nexus Between Her Pregnancy or Her
          Disability and Her Termination....................................................15

II.  PLAINTIFF CANNOT SHOW PRETEXT  ........................................16

     A.   Plaintiff Cannot Show that the Hospital's Legitimate,
          Non-Discriminatory Reason was False ........................................17

     B.   Plaintiff Has No Evidence of Intentional Discrimination ............18

III. PLAINTIFF CANNOT SHOW FAILURE TO ACCOMMODATE
     OR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS ...22

     A.   Plaintiff Caused the Break Down of the Interactive Process .......22

     B.   The Hospital Gave Plaintiff Every Accommodation She
          Requested ....................................................................................24

     C.   Plaintiff Cannot State a Claim Under the PWDCRA..................25

ii

# INDEX OF AUTHORITIES

## Cases

*Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015) ...................25

*Belasco v. Warrensville Heights City Sch.*, 634 F. App'x 507, 516
  (6th Cir. 2015).........................................................................................22

*Burdett-Foster v. BCBS of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014) ..........22

*Clark v. Uniroyal Corp.*, 119 Mich. App. 820, 826 .................................................18

*Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) ............................17

*Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) ..............14

*Cotuna v. Walmart Stores, Inc.,* No. 14-10420, 2016 WL 5661572, at *3 (E.D.
  Mich. Sept. 30, 2016) ...........................................................................25

*Demyanovich v. Cadon Plating & Coatings*, L.L.C., 747 F.3d 419, 433 (6th Cir.
  2014)........................................................................................................15

*E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015) ...........................23

*Gleed v. AT & T Mobility Servs., LLC*, 613 F. App'x 535, 539
  (6th Cir. 2015)................................................................................... 22, 23

*Gross v. FBL Financial Services*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174
  L.Ed.2d 119 (2009)................................................................................15

*Hensley v. Boddie-Noell Enterprises, Inc.*, 2000 WL 799781 (6th Cir. 2000, Hon.
  D. Hood) ................................................................................... 20, 21, 22

*Hodnett v. Chardam Gear Co., Inc.*, 749 F. App'x 390, 396 (6th Cir. 2018)..........25

*Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 622 (N.D. Ohio 2014)..........22

*Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 483 (6th Cir. 2013)......14

*Levaine v. Tower Auto. Operations USA I LLC*, 2016 U.S. Dist. LEXIS 65257 (E.
  D. Mich. May 18, 2016) ........................................................................17

222242427.2

*Lewis v. Humboldt Acquisition Corp. Inc.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc) ...............................................................................................................15

*Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) ..................17

*Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001)...........................................................................................................20

*Megivern v. Glacier Hills Inc.,* 519 F. App'x 385, 402 (6th Cir. 2013)..................19

*Patmon v. Van Dorn Co., Plastic Machinery Division*, 498 F.2d 544, 547 (6th Cir. 1974) ...............................................................................................................18

*Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014)..................................22

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F 3d 261, 264 (6th Cir. 2010).................................................................................................16

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) ............ 16, 17

*Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 570 (6th Cir. 2009) .....................19

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) .....................................16

*Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559 (6th Cir. 2009).............20

*Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 696-697 (1997)...........................16

## **Statutes and Court Rules**

MCL 37.1102(18) .....................................................................................................25

## **Other**

American with Disabilities Act....................................................................................1

Michigan Elliott-Larsen Civil Rights Act....................................................................1

Michigan Persons with Disabilities Civil Rights Act ..................................................1

## ISSUES PRESENTED

I.    Whether Defendants are entitled to judgment as a matter of law on Plaintiff's claims of pregnancy and disability discrimination?

Defendants state:   Yes.

Plaintiff states:    No.

II.   Whether Defendants are entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim?

Defendants state:   Yes.

Plaintiff states:    No.

222242427.2

## INTRODUCTION

This is an employment discrimination case. Plaintiff's four-count Complaint alleges claims of pregnancy discrimination under the Pregnancy Discrimination Act ("PDA") and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") and claims of disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA") and Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). These claims are subject to summary judgment.

Plaintiff worked as an occupational therapist. She was a contingent employee and typically worked less than 20 hours per month. Plaintiff has four children – three were born while she was employed by the Hospital and for which she took maternity leave.

In March 2017, Plaintiff announced to her department manager, Merlin Francis, that she was newly pregnant with her fourth child. Because she was considered high-risk, she requested to reduce her hours with the Hospital. Ms. Francis granted Plaintiff's request without issue. Two months later, Plaintiff requested a leave of absence because her physician had placed her on bed rest. Again, Ms. Francis granted Plaintiff's request without issue. Plaintiff was on leave for nearly four months prior to her expected due date.

Plaintiff's due date was in late August 2017. As a result, management expected Plaintiff to return to work sometime in late September or October 2017.

1

However, as of late September 2017, Plaintiff had not contacted anyone at the Hospital about her return to work. When Plaintiff's supervisor, Helene Rose, reached out to inquire about Plaintiff's status, Plaintiff informed Ms. Rose that she had suffered post-partum complications and would need to be out for "a few more weeks." The Hospital continued to allow Plaintiff to remain on leave.

By late October 2017, Plaintiff had still not returned to work or made arrangements to extend her leave. During a phone conversation with Ms. Francis, Plaintiff informed her that she would, in fact, need to extend her leave because she was using a walker and could not return to work. Ms. Francis accommodated Plaintiff's request, but told her to ensure that she contacted Human Resources to "take care of the paperwork." In early November 2017, Plaintiff sent Human Resources a doctor's note indicating she could return to work on January 1, 2018.

Human Resources sent Plaintiff a non-FMLA leave packet containing forms for both Plaintiff and her physician to complete to support her request for extended leave. Plaintiff completed her forms but never submitted the medical certification form from her physician. Regardless, the Hospital continued to allow Plaintiff to remain out and expected her to return to work in January 2018.

By January 2, 2018, no one at the Hospital had heard from Plaintiff. She had not made any arrangements to return to work. Nor had she indicated that she needed to further extend her leave beyond the January 1, 2018 return to work date

2

she previously indicated. As a result, Human Resources called Plaintiff.  Plaintiff indicated that did not know when she would be able to return to work, but that she would submit additional paperwork from her physician after an appointment she had scheduled for the next day.

By January 10, 2018, over a week later, the Hospital had not heard from Plaintiff or received the promised updated paperwork. The Hospital began taking steps to post and fill Plaintiff's position and informed Plaintiff she had been terminated because she failed to provide the required medical documentation to substantiate her request for leave.

Plaintiff's claims of discrimination and failure to accommodate have absolutely no merit and are subject to dismissal. Plaintiff has no facts or evidence showing that her pregnancy or post-partum complications were in any way related to the decision to terminate her employment. Nor does she have any facts or evidence that the Hospital failed to accommodate her. Plaintiff received more than eight months of leave from the Hospital. She requested and received a reduction in hours and three extensions of her leave of absence. These favorable actions were taken after Plaintiff announced her pregnancy and after she made the Hospital aware of her post-partum complications. Plaintiff was terminated because she simply failed to communicate with the Hospital or take any action to further extend her leave of absence. Plaintiff's claims are subject to summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### *Plaintiff's Employment*

Defendant Beaumont Health ("the Hospital") is a non-profit healthcare system.[1] Plaintiff began working as an occupational therapist at the Hospital in November 2012. *[Pl. at 41].*[2] Plaintiff was a part-time contingent employee, meaning she was required to work two weekend days per month and two holidays or holiday weekend days per year. *[Pl. at 42].* In 2017, she worked approximately 10 hours per month. *[Pl. at 41-43; MF at 15-16; Ex. 5].*

At all times during her employment, Merlin Francis was the manager of Plaintiff's department – Physical Medicine and Rehabilitation ("PM&R"). *[Pl. at 42; MF at 11, 15].* Ms. Francis stated that she had a positive relationship with Plaintiff and referred to her as "one of the best employees I had there." *[MF at 54].*

For day-to-day issues, Plaintiff reported directly to the department supervisor. *[Pl. at 46; HR at 11].* Helene Rose became Plaintiff's supervisor beginning in September 2014. *[HR at 10].*

---

[1] In 2014, Beaumont Health System, Oakwood Healthcare, and Botsford Health Care combined and created a new system called Beaumont Health. Botsford General Hospital, Plaintiff's original employer, became Beaumont Farmington Hills. For purposes of this litigation, the effects of the merger were in name only, unless otherwise specifically described. Plaintiff's employer is referred to as "the Hospital" throughout this brief for consistency.

[2] Deposition transcripts are attached at Ex. 1, Plaintiff (Pl.); Ex. 2, Merlin Francis (MF); Ex. 3, Helene Rose (HR); Ex. 4, Sharon Burke-Thomas (SBT).

4

*Plaintiff Takes Multiple Maternity Leaves Throughout Her Employment*

Plaintiff has four daughters. *[Pl. at 22].* Three of her children were born while she was employed with the Hospital. In December 2013, Plaintiff requested and was approved for maternity leave[3] for the birth of her second daughter. While on maternity leave, Plaintiff received a raise. *[Pl. at 63; Ex. 6].* In July 2015, Plaintiff again requested and was approved for leave for the birth of her third daughter. *[Pl. at 58].* Subsequent to this maternity leave, in October 2015, Plaintiff received another raise. *[Pl. at 64-65; Ex. 6].* Both before and after her maternity leaves, Plaintiff consistently received positive performance evaluations and received no write-ups or corrective actions. *[MF at 54].*

With regard to these two pregnancies and maternity leaves, Plaintiff received all of the time off she requested and returned to her position without issue after each leave. *[Pl. at 50, 58].* Plaintiff admitted that neither Ms. Francis, Ms. Rose, nor anyone else in management ever discriminated against her because of these pregnancies. *[Pl. at 51, 58-59, 102].*

*PM&R Department is Family Friendly*

In addition to Plaintiff, several other employees in the PM&R department have been pregnant and taken maternity leave. *[MF at 103; HR at 74].* Other employees in the department also have young children. *[Id.].* Ms. Rose testified:

---

[3] Plaintiff is not eligible for any leave under the Family and Medical Leave Act because she does not work enough hours in a year to qualify. *[SBT at 18; Ex. 5].*

5

"We celebrate all kinds of things in the department, especially babies." She also testified that she is especially sensitive to pregnancy-related issues as she suffered a stillborn birth and went through years of fertility issues, finally having a child of her own. *[HR at 74]*. Ms. Rose testified "So we take pregnancy very seriously and are very excited when people are pregnant. It's a blessing…We encourage family." *[Id.]*. In fact, Plaintiff herself testified that she chose to work at the Hospital because the position was flexible with her family. *[Pl. at 54-55]*.

***Plaintiff Announces Her Fourth Pregnancy and Requests a Reduction in Hours***

In early March 2017, Plaintiff told Ms. Francis that she was pregnant with her fourth child. *[Pl. at 102; MF at 17-18; Ex. 7]*. After many years of working together, Plaintiff had a good relationship with Ms. Francis and trusted her with her sensitive, personal information. *[Pl. at 103]*. Plaintiff asked Ms. Francis to keep her news confidential. *[Pl. at 103-104; MF at 18; Ex. 7]*. Plaintiff also told Ms. Francis that she was "high-risk" and requested a reduction in her hours. *[Id.]*.

After receiving Plaintiff's e-mail, Ms. Francis called Plaintiff to congratulate her and discuss her request to reduce her commitment at the Hospital. *[MF at 18-19]*. Ms. Francis wanted to clarify how much Plaintiff could or wanted to work. *[MF at 19]*. She asked if Plaintiff was able to work one weekend day per month or change her status to "flex casual." Plaintiff agreed. *[MF at 20; Ex. 7]*.

6

Ms. Francis did not want to forward Plaintiff's original email containing her personal, sensitive information and asked Plaintiff to send a separate e-mail with her request to reduce her schedule. *[MF at 20, 25; Ex. 7].* Plaintiff admitted that Ms. Francis gave her the scheduling accommodation she requested without issue. *[Pl. at 104; Ex. 8].*

***Plaintiff Receives a Four Month Leave as an Accommodation***

On May 1, 2017, Plaintiff emailed Ms. Francis with an update regarding her pregnancy. She told Ms. Francis that her physician had advised her to "take off work" immediately. *[Pl. at 105-106; MF at 25-26; Ex. 9].* Plaintiff attached a doctor's note to her email and asked to begin a leave of absence, effective that day. *[Id.].* This was approximately four months prior to her due date of August 28.

Without issue, Ms. Francis accepted her request and took her off the schedule immediately. Ms. Francis also called Plaintiff to remind her to contact Human Resources to "take care of the paperwork." *[MF at 26].*

Once Plaintiff was on leave, Ms. Francis gave her space and waited for her to reach out about the birth of her baby and her return to work. *[MF at 34].*

***Beaumont's Leave Procedures***

Prior to summer 2017, the Hospital had an employee-led process for initiating leave with Human Resources. Under this process, the employee was

7

responsible for contacting Human Resources to obtain leave of paperwork to be filled out and returned to Human Resources. *[MF at 26; SBT at 27-28].*

In July/August 2017, the Hospital changed its practices for initiating employee leaves of absence with Human Resources. At that time, managers became responsible for electronically initiating a leave request in the Hospital's new HR system, PeopleSoft. *[MF at 27; SBT at 25-27].*

Plaintiff began her leave prior to the PeopleSoft process change and, therefore, was responsible for obtaining and submitting the paperwork to Human Resources herself. However, Plaintiff never did so.

### Plaintiff Gives Birth to Her Fourth Child in August 2017

Plaintiff's fourth daughter was born on August 25, 2017. *[Pl. 123:7-9; Ex. 10].* Plaintiff did not contact Ms. Francis, Ms. Rose, or anyone in Human Resources about the birth, any post-birth issues, or her return to work.

### The Hospital Inquires About Plaintiff's Return to Work

By late September, Ms. Francis and Ms. Rose began to wonder about Plaintiff. They both wanted to know whether Plaintiff had her baby and also what Plaintiff's plans were for returning to work. Knowing that her due date was in late August, Ms. Francis and Ms. Rose expected that Plaintiff would be back on the

8

schedule in October or November.[4] However, they had heard nothing from Plaintiff. *[MF at 35-37, 40-41; HR 26-27]*.

Moreover, the due date for Plaintiff's annual "mandatories" – flu shot (or declination form), online learning modules, and other annual requirements for credentialing – was coming up, and Ms. Rose wanted to make sure Plaintiff completed them, as Ms. Rose believed Plaintiff would be back on the schedule soon. *[HR at 10-17, 28; Pl. at 53]*.

On September 26, 2017, Ms. Rose reached out to Plaintiff to inquire about her plans to return to work. *[HR at 63]*. Plaintiff told Ms. Rose that she would be "out for a few more weeks" because she "separated [her] pubis bone and [was] using a walker and crutches for stairs." *[Ex. 11]*. Ms. Rose accepted this explanation and did not request any additional paperwork from Plaintiff at this time.

***Plaintiff Does Not Know When She Will Return to Work***

On October 10, 2017, Ms. Rose emailed Plaintiff, again asking about a return to work date. *[Ex. 12]*. At this time, Ms. Rose also told Plaintiff that she needed to complete her LMS modules by the end of the month. *[HR at 32:15-18]*. Ms. Rose was still under the impression that Plaintiff would be returning to work in the immediate future. Ms. Rose testified that she followed up with Plaintiff

---

[4] Employees typically receive between six and twelve weeks for maternity leave following birth. *[MF at 37; SBT at 107:13-23]*.

because she was trying to help her return to work. According to Ms. Rose, "I wanted her back very badly….She was a good employee. We all liked her. We— You know, I never had issues with her. We all liked her. She was great with the patients." *[HR at 54:25-55:6]*.

Plaintiff told Ms. Rose: "I don't have a return date yet. I'm going to the doctor tomorrow. I may have to go to physical therapy." *[MF at 41; Ex. 12]*. This was the first time Ms. Rose knew that Plaintiff would require physical therapy. *[HR at 33:1-7]*. Plaintiff also offered to complete the LMS modules from home. *[Pl. at 113:25-114:13]*.[5]

### Plaintiff Indicates She Will Be Extending Her Leave Indefinitely

During a phone conversation between Ms. Francis and Plaintiff to discuss the LMS modules, Plaintiff informed Ms. Francis, for the first time, that she had experienced post-birth complications, that she was using a walker, and would be extending her leave as a result. Plaintiff did not provide a return date. By this time,

---

[5] Even though Plaintiff volunteered to do so, under the Hospital's practice, Plaintiff should not have been permitted to complete the LMS modules from home, as she was on leave. *[MF at 45-46; HR at 37]*. Ms. Rose also mistakenly told Plaintiff she could not be paid for her time. Plaintiff became upset, and Ms. Rose directed Plaintiff to speak with Ms. Francis. *[MF at 52-53]*. Ms. Francis immediately asked Plaintiff to call her. During their phone conversation, Ms. Francis apologized for the miscommunication. Ms. Francis ensured that Plaintiff was paid in full that same day, and she counseled Ms. Rose regarding asking employees on leave to do work off the clock. *[MF at 51, 55-56; 82; HR at 40, 54]*.

Plaintiff had been on non-FMLA leave for about six months. *[Pl. at 118-119]*. Plaintiff testified she believed her leave was "indefinite" at this point. *[Pl. at 120]*.

Ms. Francis told Plaintiff that she needed to contact Human Resources if she was planning to extend her leave of absence and to "make sure you take care of the paperwork with HR." *[Pl. at 121-122; MF at 60-61]*.

***Plaintiff Requests an Extension of Her Maternity Leave***

On November 8, 2017, Plaintiff emailed Human Resources a copy of a doctor's note requesting an extension of her leave. *[Ex. 10]*. The attached doctor's note simply stated that Plaintiff "delivered on 8/25/17" and "may return to work on 1/1/2018." *[Id.]*. The note contained no diagnosis or other medical information. *[Pl. at 123; Ex. 10]*.

Prior to November 8, 2017, it was discovered that Plaintiff had not communicated with anyone in Human Resources about her leave or submitted any non-FMLA leave HR paperwork. *[Pl. at 124]*. Notably, despite Plaintiff's failure to communicate or complete the required paperwork, Plaintiff was allowed to remain off work for seven months.

In response to Plaintiff's request, Sharon Burke-Thomas, the Hospital's Leave Administrator, reached out to Plaintiff and sent her the Hospital's Non-FMLA leave of absence packet. The "packet" included a medical certification form to be completed by a physician and returned to the Hospital. *[Pl. at 124]*.

Plaintiff admitted that she received the packet, yet never returned the medical certification form to Human Resources. *[Pl. at 125].*

### Plaintiff Does Not Return to Work or Contact the Hospital by January 1

The only information the Hospital had from Plaintiff was the note she e-mailed to Human Resources in November 2017 indicating that Plaintiff would return to work on January 1, 2018. *[MF at 76; Ex. 10].* As a result, Ms. Francis was expecting her to be back on the schedule in January 2018. *[MF at 76, 80].* By January 1, 2018, Plaintiff had been on a non-FMLA medical leave for 8 months.

Although Ms. Francis was beginning to have coverage issues in the department, especially with the holidays in November and December, Ms. Francis wanted Plaintiff to return to work and did everything she could to keep her position open for her. *[MF at 71, 74-75].* Human Resources informed Ms. Francis that she could post Plaintiff's position in November, but Ms. Francis found coverage for November and December and declined to do so in order to keep the position open to accommodate Plaintiff. *[MF at 73-74; SBT at 71; Ex. 13, 14].*

By January 2, Plaintiff had not returned to work. Nor had she communicated with anyone at the Hospital. She had also never submitted the medical certification form in the leave packet as requested by Ms. Burke-Thomas. As a result, Ms. Burke-Thomas called her on January 2 to follow-up on her status. *[Ex. 14; Pl. at 125-129].* Ms. Burke-Thomas told Plaintiff that she needed to submit an updated

12

medical certification form if she wished to request another extension of her leave. *[Pl. at 126]*. Plaintiff told Ms. Burke-Thomas she did not know when she would be able to return to work. She stated she would be visiting her doctor the next day and would submit additional paperwork. *[Pl. at 126-127]*.

### The Hospital Never Receives Any Further Communication from Plaintiff

The Hospital never received any additional paperwork from Plaintiff regarding her request for additional leave. *[SBT at 81-82]*. Nor did anyone at the Hospital ever hear from Plaintiff again. *[Pl. at 130; 133-134]*.

As a result, on January 10, 2018, the Hospital informed Plaintiff that her position had been posted. *[Ex. 15]*. They also informed Plaintiff that her request for additional leave had been denied because she had not returned the medical certification form and that, as a result, her employment had been terminated. *[Ex. 15]*. Plaintiff never contacted anyone at the Hospital to follow up regarding the January 10 letter. *[Pl. at 133-134]*.

During her deposition, Plaintiff claimed that her doctor filled out the medical certification form on January 3, 2018 and that she asked her husband to fax the paperwork to the Hospital. During discovery in this case, Plaintiff produced a copy of the completed medical certification form. *[Ex. 16]*. The form only shows that it was faxed from her physician to her husband's office on January 3. *[Ex. 16]*.

13

Although Plaintiff believes her husband faxed the paperwork, it is undisputed that it was never received by anyone at the Hospital.[6] It is also undisputed that Plaintiff never followed up with anyone at the Hospital to determine whether they had received it. She never contacted anyone to see if the termination letter – which stated no paperwork had been submitted – was a mistake. She also never applied for any other open position with Beaumont after she was cleared to return to work. *[Pl. at 133-134, 138; MF at 91; SBT at 103].*

## LEGAL ARGUMENT

## I. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF PREGNANCY OR DISABILITY DISCRIMINATION

To establish a *prima facie* case of pregnancy discrimination, Plaintiff must show that show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000); *see also Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 483 (6th Cir. 2013) (noting that ELCRA claim "rises or falls with her Title VII pregnancy discrimination claim").

---

[6] Notably, Plaintiff has no confirmation that her husband actually did fax the paperwork to Beaumont in January, despite having produced two other fax confirmation pages for documents faxed by her husband to the Hospital in November and December. *[Ex. 16, 17].* Nor does she even know the Hospital fax number that her husband used to send the paperwork. *[Pl. at 130; Ex. 18].*

14

To establish a *prima facie* case of disability discrimination, Plaintiff must show that "(1) [s]he is disabled, (2) [s]he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) [s]he suffered an adverse employment action because of her disability." *Demyanovich v. Cadon Plating & Coatings*, L.L.C., 747 F.3d 419, 433 (6th Cir. 2014). Plaintiff bears the burden of proving that her disability was the "but for" cause of the adverse employment action. *Lewis v. Humboldt Acquisition Corp. Inc.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc) (citing *Gross v. FBL Financial Services*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). *See also Demyanovich*, 747 F.3d at 433 (PWDCRA claims "essentially track" the ADA).

Both of Plaintiff's discrimination claims are subject to summary judgment.

## A. <u>Plaintiff Cannot Show a Nexus Between Her Pregnancy or Her Disability and Her Termination</u>

Plaintiff announced her pregnancy to Ms. Francis on March 9, 2017. She was not terminated until January 10, 2018. This was nearly 10 months after she announced her pregnancy and nearly three months after she indicated that she was suffering from post-partum complications. Over the course of 10 months, Plaintiff admitted that the Hospital granted every pregnancy and disability-related accommodation she requested. At the same time, Ms. Francis, Ms. Rose, and Ms. Burke-Thomas actively tried to communicate with her and ensure she was successfully able to extend her leave as needed and set up her to return to work. It

15

was only after Plaintiff failed to show up on her return to work date or otherwise communicate with management or Human Resources that she was terminated.

## II.    PLAINTIFF CANNOT SHOW PRETEXT

Even if Plaintiff were to establish a *prima facie* case of discrimination, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F 3d 261, 264 (6th Cir. 2010).  Here, the Hospital has articulated a legitimate, non-discriminatory reason for Plaintiff's termination: her failure to return to work or otherwise submit required medical documentation to support an extension of her leave.

Because the Hospital has satisfied its burden, the burden shifts back to Plaintiff to show that the Hospital's explanation for her termination was a mere pretext for intentional discrimination. *Id.* To show pretext, Plaintiff must prove that the Hospital's nondiscriminatory reason was false *and* that the Hospital intentionally discriminated against her because of her pregnancy or disability. *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 696-697 (1997); *Lytle*, 458 Mich. at 181. "[A] reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis added); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). "A plaintiff's

16

'feeling' that retaliation or discrimination is the cause of the adverse employment action is insufficient to show pretext." *Levaine v. Tower Auto. Operations USA I LLC*, 2016 U.S. Dist. LEXIS 65257 (E. D. Mich. May 18, 2016).

A. **Plaintiff Cannot Show that the Hospital's Legitimate, Non-Discriminatory Reason was False**

"Pretext can be shown by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014. "'Whichever method the plaintiff employs, [s]he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against [her].'" *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011)).

Here, the Hospital decided to end its employment relationship with Plaintiff because she failed to return to work, failed to communicate about her leave and status, and failed to submit the required paperwork to support an extension of leave. Although Plaintiff had provided a note in October stating she could return to work on January 1, 2018, she failed to do so and failed to contact the Hospital to extend her leave. It was only after the Hospital contacted Plaintiff that she reported

17

she did not know when she would be returning to work, was planning to see her doctor, and would submit the required paperwork requested by Human Resources. *[Pl. at 126-127].* Plaintiff never followed up with anyone at the Hospital after that phone call.

Based on what was known at the time, the Hospital genuinely believed that Plaintiff was not returning to work and needed to find a replacement therapist to meet its staffing needs. Plaintiff has presented no evidence that this reason was false, did not actually motivate the Hospital, or was somehow insufficient to support the action taken. When asked during her deposition why she believed her termination was connected to her pregnancy, Plaintiff simply stated: "Because I was on a leave starting with pregnancy and the leave ended up being extended due to a pregnancy-related complication." Plaintiff cannot establish pretext. *See Clark v. Uniroyal Corp.*, 119 Mich. App. 820, 826 (1982) (citing *Patmon v. Van Dorn Co., Plastic Machinery Division*, 498 F.2d 544, 547 (6th Cir. 1974) (Plaintiff "must set forth specific facts showing that there is a genuine issue for trial; conclusory allegations are insufficient to rebut evidence of nondiscriminatory conduct")).

### B. <u>Plaintiff Has No Evidence of Intentional Discrimination</u>

Plaintiff has also presented absolutely no evidence that the "real reason" for her termination was her pregnancy or pregnancy-related conditions. Plaintiff has

not presented a shred of evidence showing that her pregnancy played any role in the decision to terminate her employment. There is absolutely nothing in the record connecting Plaintiff's pregnancy status to the decision to terminate her employment. Plaintiff has failed to meet her burden and cannot establish pretext. Plaintiff's claim fails as a matter of law. *See e.g. Megivern v. Glacier Hills Inc.,* 519 F. App'x 385, 402 (6th Cir. 2013) (summary judgment granted where the plaintiff failed to present evidence of discriminatory animus."); *see also Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 570 (6th Cir. 2009) (plaintiff's "mere conjecture" that the employer's explanation was a pretext for intentional discrimination was insufficient to defeat summary judgment).

In fact, the record evidence in this case shows that Plaintiff received only *favorable* treatment during her two prior pregnancies, after she announced her third pregnancy, and after she told the Hospital she was suffering from post-birth complications. Plaintiff had been pregnant and taken maternity leave two other times during her employment with the Hospital. Subsequently, she received raises and positive performance evaluations. Ms. Francis, the decision-maker here, was her manager during both of those pregnancies and leaves.

Plaintiff also received favorable treatment during her final pregnancy. Ms. Francis: 1) accommodated Plaintiff's request to reduce her schedule; 2) accommodated Plaintiff's request to take a four-month leave of absence for pre-

birth complications; 3) accommodated Plaintiff's request to extend her leave for an additional four months for post-birth complications; and 4) took steps to find coverage instead of posting for Plaintiff's position to ensure that Plaintiff could return to the job in January 2018. Plaintiff cannot show pretext.

The fact that Plaintiff believes she had returned the paperwork through her husband does not change the result and is a red-herring. If the employer had "an honest belief in its proffered nondiscriminatory reason for discharging an employee," as evidenced by showing that its decision to discharge the employee was reasonably informed and considered, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559 (6th Cir. 2009) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). Regardless of whether Plaintiff's husband actually faxed her medical leave packet to the Hospital in January 2018, it is undisputed that no one at the Hospital ever received it. Having never received the paperwork, and because Plaintiff did not otherwise contact the Hospital, the Hospital's actions were reasonable and understandable. Plaintiff cannot establish pretext.

This fact pattern here is similar to that in *Hensley v. Boddie-Noell Enterprises, Inc.*, 2000 WL 799781 (6th Cir. 2000, Hon. D. Hood). In *Hensley*, the plaintiff was pregnant and had suffered pre-birth complications causing her to

20

request an early and extended leave of absence from her employer. When the plaintiff suffered an additional complication that caused her to be placed on bed rest until the delivery, the plaintiff sought to extend her leave of absence. *Id. at \*1-2*. At that time, her employer instructed her to fill out a second leave of absence form. *Id. at \*2*. The plaintiff filled out the form in person and left it with the manager on duty. *Id.* However, the paperwork never got to the person responsible for tracking leaves and attendance. As a result, this individual thought the plaintiff's leave had expired. She attempted to contact the plaintiff, but was unable to reach her. The plaintiff was terminated for her failure to return to work or otherwise obtain an extension of her leave absence, as well as for her repeated failure to contact human resources or her managers. *Id. at \*3*.

Upholding the lower court's decision to grant summary judgment, the Sixth Circuit held that the plaintiff failed to present any evidence that the employer's legitimate, non-discriminatory reason – "that she did not follow the company's policies in order to extend her leave" – was a pretext for pregnancy discrimination. In so holding, the Court focused on the decision-makers' intent, not the plaintiff's alleged attempt to comply with the policies. The Court noted: "Hensley may have in fact filled out the form to extend her leave, but because she has not shown that the decision-maker had any discriminatory intent she cannot succeed on her claim of discrimination under the PDA." *Id. at \*6*.

21

Here, as in *Hensley*, Plaintiff has no evidence of any discriminatory intent. Plaintiff, like the plaintiff in *Hensley*, was terminated only after her employer failed to receive the necessary paperwork to extend her leave, even though the plaintiff thought she had turned it in. Without any further evidence of intentional discrimination, this scenario does not create a genuine issue of fact for trial.

## III.   PLAINTIFF CANNOT SHOW FAILURE TO ACCOMMODATE OR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

To establish a claim for failure-to-accommodate, Plaintiff must show: (1) she is disabled; (2) she is otherwise qualified; (3) the Hospital knew or had reason to know of her disability; (4) she requested an accommodation; and (5) the Hospital failed to provide the necessary accommodation.  *Burdett-Foster v. BCBS of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014).

### A. <u>Plaintiff Caused the Break Down of the Interactive Process</u>

An employer's obligation to engage in the interactive process is triggered when an employee requests an accommodation.  *Belasco v. Warrensville Heights City Sch.*, 634 F. App'x 507, 516 (6th Cir. 2015). "The law does not require a perfect interactive process, just good faith participation."  *Kovac v. Superior Dairy, Inc.*, 998 F. Supp. 2d 609, 622 (N.D. Ohio 2014).  If the process "fails to lead to [a] reasonable accommodation," then "responsibility will lie with the party that caused the breakdown."  *Gleed v. AT & T Mobility Servs., LLC*, 613 F. App'x 535, 539 (6th Cir. 2015) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th Cir. 2014)

(quotation marks omitted). An insufficient effort in the interactive process "is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015) (internal quotation marks and italics omitted).

Here, the Hospital did engage Plaintiff in the interactive process. Despite little communication from Plaintiff, the Hospital engaged in a dialogue with Plaintiff and *granted every accommodation she requested.*

On January 2, after Plaintiff failed to return to work or otherwise communicate with the Hospital to extend her leave, Human Resources called Plaintiff to inquire about her status. Plaintiff told Human Resources that she could not return to work and would follow up by submitting additional paperwork after she saw her doctor. She never did.

To the extent Plaintiff claims there was any breakdown in the interactive process, it was Plaintiff, not the Hospital, who caused the breakdown when she failed to communicate *in any way* with the Hospital after January 2. *See Gleed*, 613 F. App'x at 539 (plaintiff caused the breakdown in the interactive process when he did not communicate with his employer after being offered an accommodation). Plaintiff cannot state a claim for failure to engage in the interactive process.

**B. <u>The Hospital Gave Plaintiff Every Accommodation She Requested</u>**

Plaintiff's claim also fails because the Hospital gave Plaintiff every accommodation she requested. As outlined above, the Hospital: 1) accommodated Plaintiff's request to reduce her schedule; 2) accommodated Plaintiff's request to take a four-month leave of absence for pre-birth complications; 3) accommodated Plaintiff's request to extend her leave for an additional four months for post-birth complications; and 4) proactively took steps to find coverage instead of posting for Plaintiff's position to ensure that Plaintiff could return to the job in January 2018. These are the only accommodations Plaintiff has ever requested.  Plaintiff cannot show the Hospital failed to accommodate her.

Moreover, even though it was not required under the ADA to continue to extend her leave indefinitely, the Hospital was receptive to the idea of extending Plaintiff's leave again in January. It was Plaintiff who failed to do the bare minimum by ensuring that the requested medical paperwork was received by Human Resources. Notably, even when the Hospital did post Plaintiff's position, she was still allowed to apply and would have been encouraged to do so. If Plaintiff would have engaged in even minimal communication with the Hospital, she could have returned when she was cleared to work.

### C. **Plaintiff Cannot State a Claim Under the PWDCRA**

Two fundamental elements of a failure to accommodate claim under the PWDCRA are that an employee must request a reasonable accommodation <u>in writing</u> and the employer must have refused to provide it. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015); *Hodnett v. Chardam Gear Co., Inc.*, 749 F. App'x 390, 396 (6th Cir. 2018) (citing MCL 37.1102(18)).

In January, Plaintiff did not request to extend her medical leave in writing. As a matter of law, Plaintiff cannot state a claim under the PWDCRA. *Cotuna v. Walmart Stores, Inc.,* No. 14-10420, 2016 WL 5661572, at *3 (E.D. Mich. Sept. 30, 2016) (granting summary judgment under the PWDCRA as to any requests for accommodation not made in writing).

<div style="margin-left:40%">

Respectfully submitted,

CLARK HILL PLC

By:   s/Carly O. Machasic_____
       Carly O. Machasic (P75572)
       Hannah Reisdorff Kendall (P80101)
       Attorneys for Defendants
       500 Woodward Avenue, Suite 3500
       Detroit, Michigan 48226
       P: (313) 965-8300
       cmachasic@clarkhill.com
       hkendall@clarkhill.com

</div>

Date:  September 26, 2019

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on September 26, 2019, via:

_____ U.S. Mail                _____ Facsimile

___X___ ECF Filing             _____ Hand Delivery

_____ E-Mail                  _____ Federal Express

s/Carly O. Machasic_____
Carly O. Machasic (P75572)

26

222242427.2